**Judy WILLIAMS, Plaintiff–Appellee,**

v.

**William Lee ROBERTS, of Fulton County, individually and in his official capacity, Defendant–Appellant.**

**No. 88–8931.**

United States Court of Appeals, Eleventh Circuit.

June 28, 1990.

Harold T. Daniel, Jr., Webb & Daniel, Atlanta, Ga., for defendant-appellant.

Robert S. Giolito, Debra E. Schwartz, Stanford Fagan & Giolito, Atlanta, Ga., for plaintiff-appellee.

**636**

Before VANCE * and ANDERSON, Circuit Judges, and Lynne **, Senior District Judge.

LYNNE, Senior District Judge:

In this action, posited upon 42 U.S.C. § 1983, the jury, responding to special interrogatories, found that "plaintiff's termination by the defendant [was] in violation of free speech rights under the First Amendment" and awarded her compensatory damages in the amount of $12,500 against Roberts in his official capacity as Fulton County Tax Commissioner (R–31).[1] In subsequent proceedings, the court ordered her reinstatement with back pay and awarded attorney's fees in the amount of $34,488.75, and $690.11 in costs (R–48). Defendant's Rule 50(b) motion for judgment notwithstanding the verdict was denied on November 16, 1988 (R–52), and this appeal followed. We affirm.

## BACKGROUND FACTS

Roberts is the Tax Commissioner for Fulton County, Georgia, and has held that office since 1973 (SR. 2–12–13). Williams was initially hired by the Fulton County Tax Commissioner's office in December 1981, as a temporary employee in the Automobile Tag Department (SR. 2–34, 93). She was hired as a permanent employee in the Receiving and Collecting Department on November 15, 1982 (SR. 2–35). Williams' job duties initially included rating automobile tag applications, filing, answering telephone inquiries about automobile tag applications, and waiting on customers

personally at the counter (SR. 2–34, 93–94). Later, as a permanent employee, she was responsible for collecting taxes and assisting tax payers (SR. 2–35). Eventually, she became a Senior Tax Clerk. This new position basically involved balancing real estate taxes, and Williams also continued to assist in taking homestead applications (SR. 2–36).

In May, 1985, Williams was appointed Editor of the Fulton County Employees Association Newsletter, "The Inside Story" (SR. 2–38). Beginning in January, 1986, Williams began writing an editorial column in the newsletter (SR. 2–41). In January, the subject of the column was "The King Holiday" (SR. 2–42). In February, 1986, the column addressed the fact that county employees had not been given a raise for 1986 (SR. 2–42). In the March 5, 1986 edition, Williams again wrote about salaries and the work done by county employees (SR. 2–45–46).

On March 20, 1986, Williams was transferred from her position in the downtown office to the South Annex (SR. 2–134–136). That transfer was effective on March 24, 1986. On March 21, 1986, Williams wrote a letter to Roberts asking why she had been transferred (SR. 2–53–54, 99). Williams sent copies of that letter to Michael Lomax, Chairman of the Fulton County Board of Commissioners, and others (SR. 2–100).

In April, Williams published an article about the Constitution and freedom of speech in the Employees Association Newsletter (SR. 2–59).

> Shall William Lee Roberts individually be required to pay compensatory damages? No.
> Shall William Lee Roberts in his official capacity as Fulton County Tax Commissioner be required to pay compensatory damages? Yes.
> We, the jury, award the plaintiff Judy Williams compensatory damages in the amount of $12,500.
> Did the defendant William Lee Roberts individually in regard to decisions made concerning the plaintiff's employment act with malice, willfulness, conscious indifference or callus disregard for the right of the plaintiff so as to authorize an award of punitive damages? No.

---

* Judge Robert S. Vance was a member of the panel which heard oral argument but due to his death on December 16, 1989, did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

** Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. In response to special interrogatories the jury returned the following verdict:
   VERDICT: Was the plaintiff's transfer to the South Annex by the defendant in violation of her free speech right under the First Amendment? No.
   Was the plaintiff's termination by the defendant in violation of her free speech right under the First Amendment? Yes.

Subsequent to her transfer, Williams filed a grievance with the Fulton County Grievance Review Committee (SR. 2–69). On May 15, 1986, a hearing was held before the Fulton County Grievance Review Committee (SR. 2–71). During that hearing, Williams stated that the Tax Commissioner's office had a policy of transferring only temporary employees to the Annex offices (SR. 1–4).

On May 23, 1986, Williams published the May edition of the employee newsletter (SR. 2–61–62). This newsletter contained an editorial column entitled "A Postcard From the Bahamas". In that column, Williams discussed her transfer from the downtown Atlanta office to the South Annex. She described the personal problems which the transfer had caused.

On May 27, 1986, Roberts wrote to Williams dismissing her from her employment with the Fulton County Commissioner's Office, based upon a charge of insubordination. Roberts stated that the reasons for the discharge were as follows

(1) That Williams had personally resisted his authority as department head and questioned the credibility of the governing authorities of Fulton County;

(2) That Williams had shown personal disrespect toward Roberts;

(3) The publication of the May newsletter "The Inside Story" in which Williams challenged Roberts' managerial rights to make employee assignments;

(4) That Williams had made incorrect and misleading statements under oath during the grievance hearing, and

(5) That Williams had failed or delayed in carrying out work assignments promptly.

At the close of plaintiff's evidence, Roberts moved the court for a directed verdict on the grounds that plaintiff had failed to prove that the speech for which she was allegedly transferred and discharged touched upon matters of public concern (SR. 1–40–45). The district court denied that motion (SR. 1–45). At the close of the defendant's case, Roberts renewed his first motion for a directed verdict, and also moved for directed verdict on the grounds

that his interest in promoting the efficiency of public services, which he performs through his employees, outweighed the interest of the plaintiff in commenting upon matters of limited public concern (SR. 1–122–128). Again, the district court denied the defendant's motion (SR. 1–128).

## DISCUSSION

### I.

In the seminal case of *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court announced a broad test to differentiate the power of government to regulate the speech of its employees and its power to limit the speech of its citizens in general.

> [T]he state has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.

391 U.S. at 568, 88 S.Ct. at 1734–35.

We have faithfully applied this balancing test after independently reviewing the facts revealed by the records in *Morales v. Stierheim,* 848 F.2d 1145 (11th Cir.1988); *McMullen v. Carson,* 754 F.2d 936 (11th Cir.1985); *Leonard v. City of Columbus,* 705 F.2d 1299 (11th Cir.1983), and *Waters v. Chaffin,* 684 F.2d 833 (11th Cir.1982). To avoid supererogation we adhere to the rationale common to those cases.

### II.

Just last year we revisited *Pickering* in *Bryson v. City of Waycross,* 888 F.2d 1562 (11th Cir.1989), and articulated a four-step analytical evaluation of the evidence to reduce the generalities of the Pickering test to specific application to the facts on a case by case basis to strike the proper balance. *Bryson,* 888 F.2d at 1565.

**638**

## A.

■ Roberts denied terminating Williams because of speech. Therefore, we have carefully examined the content, form, and context of her speech appearing in the record to determine whether it addresses a matter of public concern. *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). The speech with which we are concerned is contained in the editorials, composed by Williams, appearing in the newsletter of the Fulton County Employees Association for the months of February, March, April and May, 1986, which were distributed to all county employees and made available to the general public, and her letter of March 21, 1986, to Roberts inquiring as to the reason for her transfer.

The February editorial criticizes the recent budget adopted by the Board of Commissioners which contained no provision for an increment to county employees. The theme of the March editorial was that superior performance of duties by county employees was in the public interest and that a pay raise should be considered both as a reward and a booster of morale. The April editorial was a tribute to Freedom of Speech. The May editorial, captioned "A Postcard From the Bahamas" with its overlay of sarcasm, while bemoaning the hardship the author had endured as the result of an unwanted transfer, focused on concerted efforts by members of the association to protect employees from arbitrary and capricious actions by employers. The March 21 letter was a straight forward, business-like request for information and deserves no comment.

The district court determined that Williams' speech addressed a matter of public concern as a matter of law.[2] We agree. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), *Ei-*

*land v. City of Montgomery*, 797 F.2d 953 (11th Cir.1986).

## B.

■ In weighing Williams' first amendment interests against "the interest of the state, as an employer, in promoting the efficiency of the public service it performs through its employees," *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35, we find the scales to tip heavily in her favor. There is not a shred of evidence in the record that her speech impeded her ability to do her work, disrupted her working relationships, interfered with the operation of the tax department, threatened Roberts' authority to run his office, resulted in any internal discipline problem, affected the morale of her fellow employees, or created any disrespect for the Tax Commissioner.

The only evidence relevant to the interest of the state relied upon by Roberts was his oral testimony (SR. 2–112–176). He found the editorials distasteful as reflecting unbecoming political activity and, being of the opinion that an employee has no right to criticize her boss or her boss's superiors (SR. 2–131), considered her speech disrespectful. Beyond his subjective apprehension that such speech might have an adverse impact upon service extended by his office and its employees to the public, he could offer no objective evidence of any such effect.

## C.

■ As for causation, it is crystal clear that Williams' speech played a "substantial part" in Roberts' decision to fire her. It is significant that when the March editorial came to his attention, Williams was transferred from the downtown office to the South Annex. Of even greater significance is the fact that when Roberts read the editorial published May 23, he wrote to

2. The court charged the jury:
   "In order to prove her claim that the defendant violated her first amendment rights plaintiff must establish by a preponderance of the evidence each of the following:
   One, that the plaintiff engaged in constitutional and protected speech and she com-

mented about matters of public interest and concern. I have determined already as a matter of law she engaged in constitutionally protected speech and this element of her first amendment claim has been established and you will not have to worry about that."
No exception was reserved to such charge.

Williams on May 27, dismissing her from employment, based upon a pretextual charge of insubordination.[3] Indeed, Roberts admitted that he personally made the decision to terminate Williams because of the May editorial (SR. 2–152).

### D.

■ Roberts failed to prove by a preponderance of the evidence that he would have reached the same decision even in the absence of the protected conduct. Under the charge of insubordination, Roberts listed five specifications. The first three are predicated only upon the March, February and May editorials. The record contains no probative evidence to support either the fourth or fifth specification. Accordingly, we conclude that Roberts would not have decided to terminate Williams but for her protected conduct.

### III.

■ Roberts contends that the district court abused its discretion in ordering that Williams be reinstated to her former position. We do not agree. *Darnell v. City of Jasper, Alabama,* 730 F.2d 653 (11th Cir. 1984). (The rule of "presumptive reinstatement" in wrongful discharge cases follows the notion that money damages will seldom suffice to make whole persons who are unlawfully discriminated against in the employment environment. *Id.* at 655); *Williams v. City of Valdosta,* 689 F.2d 964 (11th Cir.1982). (In this circuit the law is clear that a plaintiff so discriminated against in the employment context is normally entitled to reinstatement and back pay, absent special circumstances warranting the denial of equitable relief. *Id.* at

977); *Allen v. Autauga County Board of Education,* 685 F.2d 1302 (11th Cir.1982) (reinstatement is a basic element of the appropriate remedy in wrongful employee discharge cases and, except in extraordinary cases, is required. *Id.* at 1305). This is not an extraordinary case.

### IV.

■ Roberts insists that the court below abused its discretion in awarding attorney's fees to Williams by declining to reduce the "lodestar" figure based upon the limited results achieved. Williams had two strings to her bow, a claim for an undesirable retaliatory transfer because of protected conduct and a claim for discharge because of identical conduct. The jury found against her on the former and in her favor on the latter.

There is no dispute as to the lodestar figure presented by Williams' attorneys and accepted by the court in making its award. The only issue presented by Roberts is whether the lodestar figure should be adjusted downward because Williams only prevailed on one of her two claims and she was awarded only a portion of the pecuniary damages she requested.

In the landmark case of *Hensley v. Eckerhart, et al.,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court announced the following result oriented standard:

> We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should

---

**3.** "Insubordination", for which a permanent employee might be dismissed, is defined in Fulton County Personnel Regulations as either "A. Intentional disobedience, assaulting or resisting authority, disrespect or use of insulting or abusive language to a superior," or "B. Failure to carry out orders, failure or excessive delay in carrying out work assignments or specific instructions of superiors." (Plaintiff's Exhibit 8, 61).

The record evidence graphically reveals the pretextual reliance by Roberts upon this charge for dismissing Williams. In her position,

Williams had no personal contact with Roberts; no working relationship existed between them, and prior to the filing of her complaint herein they had never had any personal encounter (2 SR–68–69).

Roberts testified that he had no problems with Williams' job performance. She obeyed the order transferring her to the South Annex and her superior testified that she was pleased with Williams' work there (1 SR–14, 32, 34, 37).

None of the editorials referred by name to Roberts or the Tax Commissioner's office.

be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

*Id.* at 440, 103 S.Ct. at 1943.

We have applied that standard consistently. *Goodson v. City of Atlanta*, 763 F.2d 1381 (11th Cir.1985) (counsel was required to be fully aware of all the circumstances and to explore and develop every aspect of this case. *Hensley* teaches that the most critical of its factors is the degree of success obtained. (*Id.* at 1390); *Jones v. Diamond*, 636 F.2d 1364 (5th Cir.1981) (the court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case. *Id.* at 1382); *accord: Afro-American Patrolman's League v. City of Atlanta*, 817 F.2d 719 (11th Cir.1987); *Morgado v. Birmingham–Jefferson County Civil Defense Corps*, 706 F.2d 1184 (11th Cir.1983).

It is obvious that the operative facts relevant to the transfer and discharge claims were overlapping and intertwined. The district court wisely declined to dissect the interlocking evidence and consider it in isolation as supporting only one claim or the other. Concluding that Williams succeeded in obtaining her most cherished result, reemployment, the court held that a downward modification of the requested fee award was unjustified. (R1–40–45). We agree.

Finally, the contention of Roberts that the district court abused its discretion in refusing to lower the attorney's fee award because Williams did not receive the full amount of damages she claimed is laid to rest by the holding of *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), that, as a rule, attorney's fees in civil rights cases should not be limited to a proportion of the damages awarded.

## CONCLUSION

We have tediously reviewed the record; we have found no reversible error. The judgment of the district court was right. It is AFFIRMED.