Natalie **GREENFIELD,** Plaintiff,

v.

**CITY OF MIAMI BEACH, FLORIDA, a municipal corporation, Diane W. Camber, Ernie Barham, and Carla Talarico, Defendants.**

No. 91–2728–CIV.

United States District Court, S.D. Florida.

Nov. 10, 1992.

Order Denying Rehearing Dec. 18, 1992.

David V. Kornreich, Muller, Mintz, Kornreich, Caldwell, Casey Crosland and Bramnick, P.A., Miami, FL, for defendants City of Miami Beach et al.

George Ware Cornell Jr., G. Ware Cornell Jr. P.A., Fort Lauderdale, FL, for plaintiff.

*ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANTS' MOTION FOR CLARIFICATION AND REQUEST FOR ATTORNEY'S FEES*

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon Defendants City of Miami Beach, Diane W. Camber, Ernie Barham and Carla Talarico's Motion for Partial Summary Judgment as to Counts I, III, IV and V of the complaint, filed May 26, 1992.

## INTRODUCTION

Plaintiff NATALIE GREENFIELD filed a five-count Amended Complaint against Defendants CITY OF MIAMI BEACH ("Miami Beach") and three city employees, DIANE W. CAMBER, the executive director of the Bass Museum of Art, ERNIE BARHAM, the personnel director of Miami Beach, and CARLA TALARICO, the acting City Manager of Miami Beach. Greenfield asserts that: (1) the defendants abridged her first amendment rights to freedom of speech and free exercise of religion, in violation of 42 U.S.C. § 1983; (2) that Miami Beach engaged in religious discrimination, in violation of Title VII of the Civil Rights Act of 1964, Florida's Human Rights Act of 1977, and 42 U.S.C. § 1983; and (3) that Miami Beach fired her in retaliation for her decision to file a charge of discrimination with the Equal Employment Opportunity Commission, in violation of Title VII. The EEOC retaliatory firing allegation is not challenged in the Defendants' Motion for Partial Summary Judgment and will not be addressed by the Court.

## STANDARD OF REVIEW

In deciding a summary judgment motion, a court must apply the standard in *Fed. R.Civ.P.* 56(c):

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law.

In applying this standard the Eleventh Circuit has stated that:

The party seeking summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case. In assessing whether the movant has met this burden, the courts should view the evidence and all favorable inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant.

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982) (citations omitted). Moreover, "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

[The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479–480 [64 S.Ct. 232, 234, 88 L.Ed. 239] (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial. *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.

1991). "If the evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2510–11.

## *UNDISPUTED FACTS*

On May 14, 1990, Greenfield became an employee of Miami Beach as a clerk/typist for the Bass Museum of Art ("Bass Museum"). She immediately notified her supervisors that she was a practicing Orthodox Jew, and requested accommodation of her working hours and daily schedule for the Jewish Sabbath and High Holidays. (Amended Complaint, D.E. # 10, at ¶ 10). Melissa Cloud, Greenfield's supervisor, assured her that she would not need to work on any Jewish holidays, and that "flex-time" work rules available to department employees would provide her with an opportunity to make up lost hours. (Joint Pretrial Stipulation, D.E. # 24, at 3). A short time before the 1990 Jewish high holy days of Yom Kippur and Rosh Hashannah, however, Greenfield's supervisor advised her that she was no longer eligible for "flex-time" because she had abused the privilege. Greenfield admits that she came into work early without prior approval, even though she had been warned that this behavior was unacceptable. *Id.* These self-adjustments to her schedule resulted in weeks where she worked less than the required hours without loss of pay, followed by weeks where she worked in excess of forty hours so that she could accumulate overtime payments. *Id.* She was also advised that she was only eligible for religious holiday pay to the extent of her accumulated leave time, including three sick-leave days. These changes placed Greenfield on the same footing as all Miami Beach employees. (Affidavit of Joseph R. Pinon, D.E. # 18, at ¶ 8).

In December, 1990, Greenfield held several conversations with Sue Miller, the president of Friends of the Bass Museum. On May 24, 1991, Greenfield held a single conversation with Joyce Kaiser, the incoming president of the Friends of the Bass Museum. Greenfield's conversations with Miller and Kaiser were prefaced with complaints about efficiency and waste in the development office of the Bass Museum. She proceeded, however, to

complain about her personal job evaluations and to assert her qualifications for better positions.

Greenfield was also assigned additional work prior to the Jewish high holy day of Yom Kippur, after she requested that she be able to leave work at 1:00 p.m. (D.E. # 17, at 278). Greenfield stayed until 3:00 p.m. to finish the work, even though she was not expressly asked to finish the work that afternoon, and she was able to leave work in time to celebrate the holiday without breaking any Jewish laws. *Id.* In addition, Greenfield was reprimanded for engaging in a telephone conversation with her rabbi about a religious problem that arose in the office. (D.E. # 18, at p. 7–8). Greenfield never explained to her superiors why she called her Rabbi and became hysterical during the telephone call while sitting at the front desk of the development office. *Id.*

In Fall, 1990, Greenfield received an employee evaluation report rating her as "satisfactory," but she received low scores in the categories of employee relations and quality of work. (Exhibit I, D.E. # 33). Then, Greenfield filed a charge of employment discrimination with the EEOC on January 3, 1991. Immediately after filing this charge, Greenfield missed several days of work. (D.E. # 10, at ¶ 17). Upon Greenfield's return to work five days later, Camber, the museum's executive director, asked Barham, the city's personnel director, to suspend Greenfield. On March 20, 1991, Greenfield received a three-day suspension for the following reasons: (1) conduct unbecoming an employee of the city; (2) display of an antagonistic attitude towards superiors and fellow employees; and (3) violation of a lawful and reasonable regulation or order or failure to follow the order of a superior. (Disciplinary Action Notice, D.E. # 33). Greenfield filed a second charge of discrimination with the EEOC on May 26, 1991. On June 28, 1991, Greenfield was terminated.

### I. Freedom of Speech Claim: Count V

■ The state may not demote or discharge a public employee in retaliation for speech protected under the first amendment. *Bryson v. City of Waycross,* 888 F.2d 1562,

1565 (11th Cir.1989). A public employee's right to freedom of speech, however, is not absolute. *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). To determine whether a public employer has violated the first amendment, a court must balance the employee's interest "as a citizen, in commenting upon matters of public concern, and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 384, 107 S.Ct. at 2896–97 (citing *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

■ The threshold question for the Court, therefore, is whether Greenfield's speech may be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); *Schneider v. Indian River Community College Found., Inc.,* 875 F.2d 1537, 1542 (11th Cir.1989). This inquiry requires an evaluation of the content, form, and context of Greenfield's statements, as revealed by the entire record. *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. "If the employee's speech cannot fairly be characterized as constituting speech on a matter of public concern, the inquiry is at an end." *Ferrara v. Mills,* 781 F.2d 1508, 1512 (11th Cir.1986).

Greenfield relies on her conversations with Miller and Kaiser for her free speech claim. Specifically, Greenfield points to the initial series of conversations between Miller and Greenfield, and Miller's complaint to Camber that the phone calls were inappropriate. (D.E. # 18, ¶ 17). She also points to the pivotal role played by the conversations between Greenfield and Miller in Greenfield's suspension of March 20, 1991. (Minutes of Personnel Board Meeting, D.E. # 33). Greenfield claims that her goal, in talking with Miller, was to convince Miller to intervene and make peace in the office. (Deposition of Natalie Greenfield, D.E. # 18) In addition, she asserts that she wanted to point out that she should be spending her time soliciting members, not making extra copies or doing inventory. *Id.*

■ Greenfield's statements cannot be fairly characterized as addressing matters of public concern. Greenfield does not allege serious misconduct or demonstrate that her purpose is to save taxpayers' dollars. *See Martinez v. City of Opa–Locka,* 971 F.2d 708 (11th Cir.1992) (finding allegations of government corruption are matters of public concern); *Williams v. Roberts,* 904 F.2d 634 (11th Cir.1990) (finding complaints about proposed spending provisions are protected speech). In fact, her profession of public concern loses whatever force it may have when it is considered that she took no affirmative steps to inform the public at large about the problems with which she claims to have been so gravely concerned. Instead, she contacted a person who had no direct authority to address these problems. *See Deremo v. Watkins,* 939 F.2d 908, 911 (11th Cir.1991). A few isolated complaints made verbally in private conversations do not evince a genuine public concern for corruption in government.

Moreover, the Bass Museum managers were under no obligation to run the museum as a "roundtable for employee complaints over internal office affairs." *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691. As the Sixth Circuit recently explained:

> [I]t is hard to see how any aspect of the operation of any department of any public body could be said not to constitute a legitimate subject of public concern. *Connick* instructs us to examine both the content and the context of the employee's statement, however, and the Court's opinion seems to suggest that if, having done so, we find that the employee's personal interest *qua* employee predominates over any interest he might have as a member of the general public, we are not to intercede.

*Brown v. City of Trenton,* 867 F.2d 318, 321–22 (6th Cir.1989).

Greenfield's complaints about inequities and mismanagement, centered around her personal unhappiness in her job, were not related to matters of public concern and therefore, were not protected under the first amendment. As a result, any unfavorable job action taken against Greenfield as a result of this speech, whether a suspension or a dismissal, cannot form the basis of a claim that she was retaliated against in violation of the first amendment.

## II. Religious Discrimination Claims: Counts I, III & IV

### A. Title VII and Florida Human Rights Act Claims: Counts I & IV

Greenfield charges Miami Beach with religious discrimination in violation of Title VII, the Florida Human Rights Act, and 42 U.S.C. § 1983.[1] Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice:

> to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C.A. § 2000(e)–2(a)(1) (West 1981). The United States Supreme Court has held that Title VII requires employers to make reasonable accommodations, short of undue hardship, for the religious practices of employees and prospective employees. *Trans World Airlines v. Hardison,* 432 U.S. 63, 74, 97 S.Ct. 2264, 2271, 53 L.Ed.2d 113 (1977).

### 1. Religious Accommodation

Greenfield contends that Miami Beach failed to accommodate her religious beliefs by cancelling her "flex-time" privileges. She readily admits, however, that she was never asked or forced to work on a religious holiday nor has she ever actually worked on a religious holiday. (Deposition of Natalie Greenfield, D.E. # 17(b)). She does not di-

---

1. The Florida Human Rights Act of 1977, Fla. Stat. 760.01 et seq. (West 1989), is patterned after Title VII. *O'Loughlin v. Pinchback,* 579 So.2d 788, 791 (1st DCA 1991). Pursuant to Florida's longstanding rule of statutory construction that recognizes that state laws patterned after federal statutes must be interpreted as if they were one, the Florida law is accorded the same construction as Title VII. *Id.; Massie v. University of Florida,* 570 So.2d 963, 969 (1st DCA 1990). The Court's summary judgment consideration of Greenfield's Title VII claim will therefore be dispositive of Greenfield's claim under the Florida Human Rights Act.

rectly contend that she should be paid for time spent away from the job, but she argues that she should be allowed to "make-up" any time that she misses by working on lunch-breaks or extra hours.

 Title VII requires reasonable accommodation, but it does not require employers to accommodate the religious practices of an employee in exactly the way the employee would like to be accommodated. *Pinsker v. Joint Dist. No. 28J of Adams and Arapahoe Counties*, 735 F.2d 388 (10th Cir.1984). Nor does Title VII require an employer to act in a manner that spares the employee any cost. *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 145–46 (5th Cir.1982). Miami Beach adopted a policy allowing employees to take off work whenever necessary without pay for religious observances. (Affidavit of Joseph R. Pinon, D.E. # 18). All city employees were only entitled to pay for religious holidays to the extent of their available leave time, including up to three days of sick leave. *Id.*

 In addition, Miami Beach authorizes its department heads, at their discretion, to utilize "flex time" schedules. *Id.* Greenfield was initially allowed to use a flexible schedule as a further accommodation of her religious needs. (Joint Pre-trial Stipulation, D.E. # 24). The evidence clearly shows, however, that Greenfield took advantage of this privilege by changing her schedule from day-to-day and coming into work without prior approval against the orders of her superiors. (D.E. # 17(b)). These self-adjustments to her schedule resulted in weeks where she worked less than the required hours without loss of pay, followed by weeks where she worked in excess of forty hours so that she could accumulate overtime payments. *Id.* In response, Miami Beach justifiably curtailed her "flex-time" schedule. *Id.*

The religious leave policy and the removal of Greenfield's flexible schedule option jeopardized neither Greenfield's job nor her observation of the Jewish holidays. The flex-time option was more than what was required by Miami Beach's religious holiday policy or by Title VII. In fact, Greenfield presents no evidence demonstrating that any other employees at the Bass Museum used flex-time schedules. In addition, Greenfield had the option of using her three-day sick leave or any general accumulated leave time in order to obtain paid religious leave.

 Miami Beach's policy may have occasionally caused Greenfield to take an unpaid holiday, but it was not an unreasonable accommodation of Greenfield's religious beliefs and practices. "The provision of unpaid leave eliminates the conflict between employment requirements and religious practices by allowing the individual to observe fully religious holy days and requires him only to give up compensation for a day that he did not in fact work." *Ansonia Bd. of Education v. Philbrook*, 479 U.S. 60, 70, 107 S.Ct. 367, 373, 93 L.Ed.2d 305 (1986). In effect, employers are not required under Title VII to provide fully paid leave to employees for religious holidays where the employee is absent from work. *Pinsker*, 735 F.2d at 391. A requirement forcing an employer to bear additional costs when no such costs are incurred to give other employees the days off that they want would involve unequal treatment of employees on the basis of their religion. *Hardison*, 432 U.S. at 84, 97 S.Ct. at 2276.

### 2. *Religious Discrimination*

 Greenfield also claims that the disciplinary actions taken against her were the result of religious discrimination. She admits that she cannot proffer any direct evidence showing a discriminatory intent or motive, so she attempts to prove a Title VII disparate treatment violation through circumstantial evidence. (D.E. # 33). In order to state a claim for religious discrimination using indirect evidence, Greenfield must make out a prima-facie case. *See McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima-facie case of discrimination, Greenfield must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for and satisfactorily performed the duties of her job; (3) she was discharged; and (4) others not in the protected class were treated more favorably. *Andre v. Bendix Corp.*, 841 F.2d 172 (7th Cir.1987).

In this case, Greenfield demonstrated that she is a member of a protected class and was discharged, but she fails to prove that she was performing to her employer's satisfaction. The defendants have provided evidence that Greenfield did poorly on a job evaluation, repeatedly disobeyed instructions from her superiors, and made inappropriate phone calls of a personal nature to an important benefactor of the Bass Museum. (D.E. # 18). Greenfield also readily admits that she chose her own hours and was often reprimanded for scheduling problems. (D.E. # 17). More fundamentally, Greenfield fails to demonstrate that other employees not in her protected class acted in a similar manner as Greenfield but were retained by the employer. She fails to demonstrate with credible evidence that other similarly situated non-Jewish employees received favorable treatment. *See Johnson v. Artim Transportation System*, 826 F.2d 538 (7th Cir.1987), cert. denied, 486 U.S. 1023, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988).

Specifically, Greenfield alleges that she was given extra work before Yom Kippur, and that she was reprimanded for telephoning a Rabbi to discuss a religious problem during the workday. (Amended Complaint, D.E. # 10). Greenfield fails to show in any manner, however, that other employees were not reprimanded when they became hysterical on the job, or that she was singled out to receive an especially heavy work load. . She admits that she was never asked to stay late to finish extra work on Yom Kippur. (D.E. 17(b)). She also admits that she called the Rabbi while working at the front desk in the development office, and she became very emotional and cried. *Id.* Accepting these allegations as true, the Court finds that Greenfield fails to offer any evidence that Miami Beach engaged in religious discrimination.

Finally, Greenfield claims that an employee told her that she overheard a conversation where a supervisor said to another supervisor, "that's just like a Jew." (Affidavit of Mary Blackburn Posey, D.E. # 33). This statement may be repulsive, but Greenfield offers no evidence that the statement was in any way related to her firing or her suspension. More importantly, the statement is hearsay evidence that may not be considered by the Court when deciding a summary judgment motion. *Avirgan*, 932 F.2d at 1577. There is simply no credible direct or indirect evidence suggesting that Greenfield was suspended or terminated as a result of religious discrimination.

### B. The 42 U.S.C. § 1983 Claims: Count III

Greenfield also alleges that she is the victim of a retaliatory suspension and termination for engaging in the free exercise of her religious beliefs as guaranteed by 42 U.S.C. § 1983. In analyzing Greenfield's § 1983 claim, the Court must determine whether Miami Beach has placed a burden upon her rights to free exercise of religion. *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 717, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1980). In *Thomas*, the United States Supreme Court held that:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or denies such a benefit because of conduct mandated by a religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.

*Id.* at 717–18, 101 S.Ct. at 1432.

This standard was developed for situations where the "adherent" is forced to choose between violating her religious beliefs for the sake of continued employment or relinquishing employment to obey religious tenets. Greenfield, however, was never forced to choose between continued employment or her religious tenets. The only choice she was forced to make was whether she wanted to lose pay for those few days when she needed to attend religious services. As this Court noted earlier, loss of an occasional paycheck for time not worked does not constitute substantial pressure on an employee to violate her beliefs. *See Pinsker*, 735 F.2d at 391.

In *Philbrook*, the U.S. Supreme Court held that unpaid leave is a reasonable accommodation of religion, unless the employer forbids

employees from using leave for religious purposes, but allows employees to use leave for any other purpose. *Philbrook,* 479 U.S. at 70, 107 S.Ct. at 372. In this case, Miami Beach allows employees to use any amount of their accumulated leave or sick time for religious holidays. Therefore, Greenfield's religious free exercise rights have not been violated by the policies or actions of Miami Beach.

### CONCLUSION

Greenfield's speech was not a matter of public concern, and Greenfield's religious requirements received adequate accommodation. Greenfield admits that she has proffered no direct evidence of religious discrimination, and she fails to present any credible evidence of indirect discrimination. It is therefore

ORDERED AND ADJUDGED that

Defendants City of Miami Beach, Diane W. Camber, Ernie Barham and Carla Talarico's Motion for Partial Summary Judgment as to Counts I, III, IV and V of the complaint is GRANTED. The action may proceed as to Count II of the complaint.

DONE AND ORDERED.

### ORDER DENYING PLAINTIFF'S MO- TION FOR REHEARING, NEW TRI- AL AND/OR AMENDED JUDGMENT

THIS CAUSE comes before the Court upon Plaintiff's Motion for Rehearing, New Trial and/or Amended Judgment, filed November 25, 1992.

On November 12, 1992, the Court issued an Order granting Defendant's Motion for Partial Summary Judgment. Plaintiff Natalie Greenfield ("Greenfield") contends that the Court committed two errors: (1) the Court erred in refusing to consider or characterize anti-semitism and waste as matters of public concern; and (2) the Court erred in determining that there did not exist a genuine issue of material fact as to religious discrimination in the workplace. The Court will address each of these claims separately:

(1) *Freedom of Speech*

Greenfield asserts that the Court ignored all issues of speech related to anti-semitism and waste. Contrary to Greenfield's allegations, however, the Court did not ignore speech involving waste and anti-semitism. The Court made a determination, primarily using Greenfield's own deposition testimony, that Greenfield's speech was focused on personal intra-office problems, not issues of public concern. It is well settled that the first prong of the free speech analysis is an issue of law for determination by the Court, not an issue for the trier of fact. *Pearson v. Macon–Bibb County Hospital Authority,* 952 F.2d 1274 (11th Cir.1992), *quoting Ferrara v. Mills,* 781 F.2d 1508 (11th Cir.1986).

Greenfield also asserts that the Court ignored Diane Camber's cavalier response to suggestions of anti-semitism from Mary Blackburn Posey, and that Diane Camber failed to investigate the charges of anti-semitism made to Sue Miller by Greenfield. Greenfield fails to realize, however, that the Court's role in this free speech analysis is to evaluate the content, form and context of Greenfield's statements, not the statements or activities of other employees. *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

Finally, as part of her motion for rehearing, Greenfield submitted the Anti–Defamation League Survey on Anti–Semitism and Prejudice in America. The Court, however, has never disputed the obvious fact that anti-semitism is a matter of public concern. Greenfield fails to understand that the Court does not function as a branch of the Orwellian "thought police." Whether some employees are anti-semitic or not is irrelevant to the Court's determination of whether speech is entitled to First Amendment protection. The Court's duty is to examine the speech and determine if it constitutes speech on a matter of public concern, not to act as a political censor. In this instance, Greenfield's speech was primarily aimed toward personal gain, not public concerns.

(2) *Religious Discrimination*

Greenfield claims that the Court committed a second error by finding that Greenfield

was not discriminated against on the basis of her religion. In furtherance of this assertion, Greenfield repeatedly contends that she was a victim of direct religious discrimination. (Motion for Rehearing, D.E. # 60). Greenfield, however, conceded in an earlier filing that there is no evidence of any direct religious discrimination against her. (Greenfield's Response to the Defendant's Motion for Summary Judgment, D.E. # 33). In addition, Greenfield makes assertions that are not supported by the record. For instance, it is undisputed that Greenfield was never asked nor compelled by her employer to commit an anti-religious act, yet Greenfield now alleges that she was forced to destroy sacred scripts. (Motion for Rehearing, D.E. # 60 at p. 9).

### Conclusion

For these reasons, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Rehearing, New Trial and/or Amended Judgment is DENIED.

DONE AND ORDERED.