[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 29, 2002
THOMAS K. KAHN
CLERK

No. 00-13820

D.C. Docket No. 94-06918-CV-WPD

MELANIE WILLIAMS,

Plaintiff-Appellant,
Cross-Appellee,

versus

MOTOROLA, INC., a Florida corporation,

Defendant-Appellee,
Cross-Appellant,

LINDA DRAKE, as Director of Benefits
Administration for Motorola Employee
Health Benefit Plan, GLENN URBISH,
THOMAS SWIRBEL, ROBERT PENNISI,

Defendants-Appellees.

Appeals from the United States District Court
for the Southern District of Florida

**(August 29, 2002)**

Before TJOFLAT, WILSON and COWEN\*, Circuit Judges.

_____
*Honorable Robert E. Cowen , U.S. Circuit Judge for the Third Circuit, sitting by designation.

COWEN, Circuit Judge:

Melanie Williams brought this action against Defendants Motorola, Inc., and several individuals. Her Amended Complaint contained thirteen counts and alleged federal claims under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), codified at 29 U.S.C. §§ 1160 *et seq.*, the Employment Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. §§ 1001 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, codified at 42 U.S.C. §§ 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. §§ 12101 *et seq.*, as well as various state law claims. Following a complicated procedural history which we detail within, the District Court awarded nominal damages of one dollar to Williams against Motorola after dismissing most of her claims on motions for judgment as a matter of law. Both Williams and Motorola appeal different aspects of the District Court's orders. We will remand this matter to the District Court with the instruction to vacate its Judgment of one dollar nominal damages and to dismiss Williams' case with prejudice.

I.

Williams filed this action after she was terminated in 1993 from her engineering job at Motorola, where she had worked for almost four years. Before

2

trial, the District Court dismissed on summary judgment all but one of Williams' COBRA claims (Counts I, II, VIII, and Count IV (as it applied to the individual defendant Linda Drake) of the Amended Complaint) and her ERISA claims (Count III). The record before us is not clear, but it appears the District Court eventually granted Motorola's Motion barring Williams' breach of contract claims involving patents (Count XII). Williams subsequently voluntarily dismissed the individual defendants and Count XI (False Light Invasion of Privacy).

Seven counts (IV, V, VI,VII, IX, X, XIII) went to trial. At the close of Williams' case, she voluntarily dismissed Count X (defamation) and the District Court granted motions for judgment as a matter of law in favor of Motorola on Count VII (ADA claims) and Count XIII (intentional infliction of emotional distress). Claims contained in Count IX (conversion) were settled during the trial for $250. At the close of evidence the District Court granted motions for judgment as a matter of law on Counts V and VI to the extent that they alleged sexual harassment and sex discrimination related to employment termination.

Only Counts V and VI went to the jury only insofar as they alleged pre-termination discrimination, and the District Court instructed the jury to consider the two counts only insofar as they related to job assignments, performance appraisals and pay promotion. The jury returned a verdict in favor of Williams in

3

the amout of $300,000 for emotional distress regarding pre-termination discrimination in job assignments and performance appraisals.[1]  The parties tried the remaining COBRA issue (contained in Count IV) to the District Court, which rendered a final judgment in favor of Motorola.

The District Court remitted the jury award to $50,000.  In its Omnibus Order, the District Court explained that there was "evidence presented at trial concerning emotional distress, the testimony concerned emotional distress suffered as a result of the plaintiff's termination and claims of sexual harassment, claims for which a [motion for a judgment as a matter of law] was granted the defendant." Record Excerpts (Williams) at tab 187.[2]  The District Court stated that the award

---

[1]The Final Judgment, entered by the District Court on February 28, 1998, stated in relevant part:

> A jury returned a verdict on February 18, 1998, finding that the plaintiff was discriminated against by the defendant in employment based on her sex, and that she suffered pain and suffering damages in the amount of $300,000.
>
> . . .
>
> Judgment is entered for the plaintiff in the amount of $300,000 on the claim for disparate treatment based on sex, and in the amount of $250 on the claim for conversion, for a total of $325,000.
> Judgment is entered for the defendant on all other causes of action.
>
Record Excerpts (Williams) at tab 178.

[2]The Omnibus Order stated in relevant part:

> 3.    Defendant's Motion to Remit Damages is GRANTED.  The jury awarded the plaintiff $300,000 for her claim of emotional distress regarding pre-termination discrimination in performance evaluations

based on mental or emotional distress in the amount of $300,000 concerning pre-termination discrimination in performance evaluations and job assignments was unsupported by testimony and was so excessive that it shocked the District Court's conscience. *Id.*

In a subsequent order the District Court clarified the Omnibus Order, giving Williams the option of a new trial on the issue of damages in lieu of the remitted judgment to $50,000. Williams chose the new trial option. The District Court Judge thereafter recused himself and the case was reassigned. The reassigned District Court Judge was unable to hear the matter, and a third District Court Judge was assigned the case.

---

and job assignments. While evidence was presented at trial concerning emotional distress, the testimony concerning emotional distress suffered as a result of the plaintiff's termination and claims of sexual harassment, claims for which a [motion for a judgment as a matter of law] was granted the defendant.

The award based on mental or emotional distress regarding pre-termination discrimination in performance evaluations and job assignments is unsupported by expert testimony and is so grossly excessive as to shock the conscience of the Court. Accordingly, the award is remitted to $50,000.

Omnibus Order (entered on Sept. 15, 1998) at Tab 187 of Record Excerpts (citation omitted).

After a series of motions and conferences, both parties appeared for a calendar call in preparation for trial, whereupon counsel for Williams read an electronic message he had received from Williams. The message directed her counsel to dismiss the case. At the conclusion of the calendar call, the District Court entered a Final Order denying certain motions as moot and awarding Final Judgment to Williams for nominal damages in the amount of $1.00. Both Williams and Motorola appeal.

## II.

We have jurisdiction over these appeals under 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). We apply the same standard used by the District Court when we review a ruling on a motion for a judgment as a matter of law. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001).

> We consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party. If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied and the case was properly submitted to the jury.
> It bears repeating that a mere scintilla of evidence does not create a jury question. Motions for [judgment as a matter of law and for judgment

6

> not withstanding the verdict need not be reserved for situations where there is a complete absence of facts to support a jury verdict. Rather, there must be a substantial conflict in evidence to support a jury question.

*Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989) (footnotes omitted).

We will affirm all of the orders of the District Court granting motions for judgment as a matter of law, but conclude that the District Court erred in not also granting a motion for judgment as a matter of law on Williams' claims of sexual harassment and sex discrimination arising out of her job assignments, performance appraisals, and pay promotion. Accordingly, the District Court erred when it entered a judgment awarding Williams one dollar nominal damages.

A.     Williams' ADA Claims

Williams made two separate ADA claims: (1) that Motorola "perceived" her to have a disability and discharged her based upon that perception, and (2) irrespective of the issue of disability, Motorola wrongly "required" her to submit to medical examinations in violation of 42 U.S.C. § 12112(d)(4)(A) ("A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.").

The District Court granted a motion for judgment as a matter of law on all of Williams' ADA claims. It explained that Williams did not sufficiently establish her "perception" argument, given the evidence of Williams' hostility, threats, and insubordination for which she had already been discharged.

Williams emphasizes that she does not need to actually have a disability to raise her ADA claims. While the Eleventh Circuit has not addressed this issue, other Circuits considering the question have held that a non-disabled plaintiff may pursue a claim under the ADA of an employer's alleged "perception" of an employee's disability. *See, e.g., Roe v. Cheyenne Mountain Conf. Resort Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997). We agree and hold that a plaintiff may maintain a claim under the ADA of being perceived as disabled without proof of actually being disabled. However, with regard to Williams' perception claim that Motorola violated the ADA by suggesting a medical examination, the argument fails. Williams never made out a prima facie case of discrimination.

To make a prima facie case of discrimination under the ADA, Williams had to show a disability (whether real or perceived), that she was otherwise qualified to perform the essential functions of the job, and she was discriminated against based upon the (real or perceived) disability. *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996). An employee's ability to handle reasonably

8

necessary stress and work reasonably well with others are essential functions of any position. Absence of such skills prevents the employee from being "otherwise qualified." *See, e.g., Palmer v. Circuit Crt. Of Cook Cty.*, 117 F.3d 351 (7th Cir. 1997); *Grenier v. Cyanimid Plastics, Inc.*, 70 F.3d 667, 674-75 (1st Cir. 1995); *Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437, 441-42 (6th Cir. 1991); *Weigert v. Georgetown Univ.*, 120 F.Supp.2d 1, 14 (D.D.C. 2000) ("[T]echnical skills and experience are not the only essential requirements of a job and [] stability and the ability to interact with co-workers constitutes an essential function."). Our review of the record reflects that there is overwhelming evidence of Williams' inability to work with others, not to mention engaging in threats of violence, and insubordination.

Williams' ADA claims also fail because the record is clear that she was *not* discharged for her failure to submit to a medical examination. Motorola terminated Williams because of her inability to work with others, and for insubordination and threats of violence. Williams acknowledged in testimony that the termination letter related she was discharged for insubordination and inability to get along with co-workers (for example, calling Glenn Urbish, the Vice President and Manager of Williams' department, a "God damned liar" and charging at him with clenched fists). *See* R17-64-65.

9

The termination letter as well as uncontradicted testimony of the Manager of Human Resources reveal that the medical examination was offered as a suggestive option to termination, along with the opportunity for Williams to voluntarily resign. No evidence supports the allegation that Motorola terminated Williams for refusal to submit to a medical examination. We also observe that, on the facts of this case, Motorola could have properly required a medical examination given Williams' recent behavior and threats. *See, e.g., Krocka v. City of Chicago*, 203 F.3d 507, 515 (7th Cir. 2000) ("[W]here inquiries into the psychiatric health of an employee are job related and reflect a 'concern [] with the safety of . . . employees,' the employer may, depending on the circumstances of the particular case, *require* specific medical information from the employee and may *require* that the employee undergo a *physical examination* designed to determine his ability to work.") (citation omitted) (emphasis added). None of Williams' claims under the ADA can withstand a motion for judgment as a matter of law.

B.     Williams' Claims of Retaliation and Termination

Williams also argues that the District Court erred in dismissing her retaliation claims related to both her disability, as well as sex discrimination and sexual harassment allegations. A prima facie case of retaliation contains three elements: "first, the plaintiff engaged in statutorily protected conduct; second, the

10

plaintiff suffered an adverse employment action; and finally, the adverse action was causally related to the protected expression." *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (elements of a retaliation claim are the same under the ADA and Title VII).

Williams asserts that her refusal to take a medical exam constituted the first prong ("statutorily protected conduct") of her prima facie case of retaliation under the ADA, and that her complaints of sex discrimination and harassment to her superiors at Motorola likewise satisfy the first prong regarding retaliation claims under Title VII. She claims that her termination from Motorola fulfills the second prong (an "adverse employment action") of these retaliation claims.

It is far from clear that Williams alleged retaliation in her Amended Complaint. The record reflects that the retaliation claims (at least with regard to Title VII) were not even tried to the District Court.[3] Even if the record did reflect

---

[3]This exchange occurred between Mr. Cornell (Counsel for Williams), Mr. Stucki (Counsel for Motorola) and the District Court toward the end of the trial:

> Mr. Cornell: There is buried within this also a retaliation issue. It's in the complaint. It was tried. On the issue of retaliation because the complaining of sexual harassment is the way that it was tried. It is in her complaint. I submit that.
>
> The Court: As a separate cause of action?
>
> Mr. Cornell: No. It is all encompassed within Title VII.
>
> Mr. Stucki: Lord knows what is encompassed in that cause of action. I had no idea it was anything other than a termination

11

that these claims were included in Williams' Amended Complaint and Williams could meet the first two prongs of the test, Williams cannot meet the third prong. The record firmly reflects that Williams was fired solely for insubordination and inability to get along with her co-workers and superiors. Since Williams did not meet the third prong of the prima facie case on her retaliation claims, the District Court properly granted motions for judgment as a matter of law.

C.      Williams' Claims of Sexual Harassment and Sex Discrimination

The District Court granted motions for judgment as a matter of law on Williams' claims of sexual harassment and sex discrimination to the extent that they related to her termination from employment. The jury was only instructed on pre-termination sexual harassment and sex discrimination insofar as they related to

---

case. Now it's a retaliation case as well?

The Court:   I think you understand where we are heading with this.

Mr. Cornell:       I think I do. I just want to make that note for the record because I do think it's there. I do think it's been tried.

The Court:   Retaliation?

Mr. Cornell:       Yes, for complaining about sexual harassment.

The Court:   Retaliation being the termination?

Mr. Cornell:       Yes.

Mr. Stucki:  There is nothing in the pretrial order about that.

The Court:   I think the termination is gone away.

Mr. Cornell:       I am here as a lawyer.

The Court:   You are making a record. I understand that.

Record Volume 22 at 200-01.

12

job assignments, performance appraisals, and pay promotion. The jury returned a verdict for Williams and awarded $300,000 for pain and suffering. The District Court remitted the award to $50,000. Our thorough review of the record fails to reveal any evidentiary support for *any* of Williams' Title VII claims. Because no "substantial conflict" existed to support a jury question, the District Court should have granted a motion for judgement as a matter of law on *all* of the claims. *See Carter*, 870 F.2d at 581.

With regard to Williams' hostile environment claims under Title VII, to establish a claim of hostile-environment based on harassment by a supervisor, an employee must show:

> (1)    that he or she belongs to a protected group;
> (2)    that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature;
> (3)    that the harassment must have been based on the sex of the employee;
> (4)    that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and
> (5)    a basis for holding the employer liable.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

In her briefs Williams presents a host of incidents to support her claims. Almost all of these incidents are not supported by the record, and most of them are

13

not related to Williams' sex. The conduct alleged by Williams falls well short of the level of either severe or pervasive conduct sufficient to alter Williams' terms or conditions of employment so as to sustain her claims. *See, e.g., Mendoza*, 195 F.3d at 1246-47 (minimum level of severity or pervasiveness necessary for harassing conduct to constitute discrimination in violation of Title VII).

With regard to Williams' disparate treatment claims under Title VII for improper termination, plaintiff must prove that the defendant acted with discriminatory purpose. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). In the absence of direct evidence, a plaintiff must create an inference of discrimination by establishing a prima facie case. *Id.* If she does so, the defendant then must articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* This Court has "consistently held that a plaintiff discharged for misconduct makes out a prima facie case of discriminatory discharge if she shows that she is a member of a protected class, that she was qualified for the job from which she was fired, and 'that the misconduct for which she was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.'" *Nix*, 738 F.2d at 1185 (citation omitted). Williams is a member of a protected class and was terminated, but she has failed to present any evidence that she was performing satisfactorily or

14

treated any differently from males who were insubordinate and had difficulty getting along with co-workers. *Greenfield v. City of Miami Beach*, 844 F.Supp. 1519, 1526 (S.D. Fla. 1992) ("Defendants have provided evidence that [plaintiff] did poorly on a job evaluation, repeatedly disobeyed instructions from her superiors, and made inappropriate phone calls. . . . More fundamentally, [plaintiff] fails to demonstrate that other employees not in her protected class acted in a similar manner as [plaintiff] but were retained by the employer."). The same conclusion is reached regarding Williams' claims of disparate treatment regarding job assignments, performance appraisals, and pay promotion. *Id.*; *see also Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir. 1989).

We conclude that none of Williams' Title VII claims, both for wrongful termination and pre-termination harassment, should have been submitted to the jury. We will therefore AFFIRM the District Court's orders granting the motions for judgment as a matter of law on Williams' Title VII claims.

Since none of Williams' Title VII claims were properly submitted to the jury, the District Court erred when it awarded nominal damages to Williams. We

will VACATE the Order awarding nominal damages and REMAND the matter with instructions to dismiss Williams' case against Motorola with prejudice.[4]

### III.

We AFFIRM all of the orders of the District Court granting motions for judgment as a matter of law. The District Court erred sending to the jury Williams' pre-termination claims of sexual harassment and sex discrimination since there was insufficient evidence for the jury to consider the matter. The District Court also erred in awarding Williams nominal damages of one dollar. We will VACATE the judgment awarding one dollar nominal damages and REMAND the case with the instruction to enter an order dismissing this matter with prejudice. To the extent that we did not discuss other points of error raised by Williams or by Motorola, we deem them without merit.

---

[4]Williams raises a number of issues involving events that occurred in relation to the trial of her Title VII claims, including errors with the jury verdict form, pretrial rulings, motions *in limine*, and that the District Court erroneously dismissed her new trial following the remittitur. Because we hold that *none* of Williams' Title VII claims should have been presented to the jury, it is unnecessary for us to address these subsequent issues raised by Williams.