**Maybell WEBB, Plaintiff,**

v.

**R&B HOLDING COMPANY, INC., Defendant.**

**No. 97-2781-CIV.**

United States District Court,
S.D. Florida.

Jan. 21, 1998.

Leslie Holland, Miami, FL, for Plaintiff.

Asley Kaplan, Ft. Lauderdale, FL, for Defendant.

## ORDER GRANTING SUMMARY FINAL JUDGMENT FOR DEFENDANT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendant's Motion for Summary Judgment, filed November 3, 1997. Plaintiff filed a response on December 23, 1997.

### Factual Background

Plaintiff filed a three count Complaint in this Court claiming that Defendant: (1) terminated her on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e *et seq.;* (2) permitted a hostile working environment in violation of Title VII; and (3) discharged her in retaliation for exercising activity protected by Title VII.

Plaintiff, an English-speaking African–American, was employed by Defendant, a car dealership, as a title clerk. Plaintiff's department was predominantly Caucasian–Hispanic. Plaintiff alleges that she was subject to discrimination and harassment during her tenure with Defendant. Specifically, she alleges that she was "subjected to a Spanish speaking working environment," which created a hostile work environment. (Plain. Affidavit at ¶ 8). Plaintiff states in her affidavit that she complained to her manager about the Spanish speaking, but that her manager "failed to take any remedial action." (Plain. Affidavit at ¶ 8). In her deposition, however, Plaintiff states that after her complaints, her supervisor reprimanded the other clerks and that the Spanish speaking "stopped for a week," but then continued. (Plain.Dep. at p. 135). Plaintiff also claims that on one occa-

sion she overheard a co-worker use the word "negra," although Plaintiff admits that she did not know in what context the word was used, whether the word was derogatory in nature, or whether the word was directed at her.

In addition, Plaintiff asserts that the Caucasian Spanish-speaking title clerks were not disciplined as often as she. In deposition, however, she admits that she did not know whether these employees had received as many customer and employee complaints as she or, indeed, how many times they had been disciplined. Plaintiff also alleges that another title clerk received higher wages than she. Specifically, she states in her affidavit that she received $10/hour while the other clerk received $12/hour. She states in her deposition, however, that she received $12/hour while the other clerk received around $13/hour. Finally, Plaintiff claims that she was terminated in retaliation for complaining to her superior "about the speaking of Spanish in the workplace." (Plain. Affidavit at ¶ 9).

Defendant asserts that it terminated Plaintiff because of her insubordination. Specifically, Defendant contends that Plaintiff's supervisors had received several complaints about Plaintiff's rudeness from customers and employees. In one case, a customer's attorney sent a letter to Defendant complaining about Plaintiff's unwillingness to help the customer. When asked in deposition, "Do the customers ever complain that you've been rude to them," Plaintiff responded, "Yeah. They do it all the time if they want their tag or whatever they want pushed through. It happens all the time." (Plain. Dep. at p. 130). Plaintiff, however, states that the customer complaints were unjustified because she had never been rude. According to Defendant, the triggering incident of Plaintiff's termination was a confrontation with her newly appointed supervisor, Jackie Morales ("Morales"). Morales had asked Plaintiff to complete a task, to which Plaintiff responded that she "was in the middle of something" and that she would do it when she got the chance. (Plain.Dep. at p. 148). Morales then complained to her supervisor, Nidia Soberon ("Soberon"), about the inci-

dent. Soberon called Plaintiff into her office and asked her to carry out Morales's directive. According to Soberon, Plaintiff mumbled, "I'm not going to do it." Plaintiff claims that she actually stated "I'm not going to quit." Soberon terminated Plaintiff for insubordination based on her refusal to carry out the directive and her history of complaints from customers and co-workers.

### *Legal Standard*

Summary judgment is appropriate only where it is shown that no genuine dispute as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on the moving party's motion, the court must view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court "should 'resolve all reasonable doubts about the facts in favor of the non-movant' and draw 'all justifiable inferences ... in his favor.'" *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991) (alteration in original) (citation omitted).

Initially, the moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir.1993). To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the court should refuse to grant summary judgment. *Hairston,* 9 F.3d at 919. However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252.

In a Title VII case, the plaintiff has the initial burden of establishing a prima facie case of discrimination, thereby creating a presumption of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the plaintiff has established a prima facie case, the burden shifts to the employer to come forward with a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802; *Burdine,* 450 U.S. at 254. If the employer satisfies this burden, the presumption of discrimination disappears, and the plaintiff must come forward with evidence that the proffered reasons are pretextual. The plaintiff may accomplish this "either directly by persuading the court that a discriminatory motive more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) (citing *Burdine,* 450 U.S. at 256).

▮ Upon a motion for summary judgment where the employer has proffered business reasons, "[t]he district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Id.* at 1538 (quoting *Cooper–Houston v. Southern Ry. Co.,* 37 F.3d 603, 605 (11th Cir.1994)). To survive a motion for summary judgment, the plaintiff must demonstrate "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id.* (quoting *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1072 (3d Cir.1996) (internal citations and quotation marks omitted)).

### Analysis

### I. Discriminatory Discharge

▮ Defendant first asserts that Plaintiff's claim of discriminatory discharge cannot sur-

vive summary judgment. To prove a prima facie case of discrimination under Title VII, a plaintiff must establish that: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). Plaintiff has not established a prima facie case of discriminatory discharge. First, although Plaintiff conclusively asserts that she was qualified for the job, Defendant provides evidence that Plaintiff, in fact, was not qualified. Specifically, Defendant presents evidence showing that Plaintiff had been terminated from six prior dealerships, received multiple complaints from customers and co-workers, and had confrontations with her superiors.

Even if the Court were to assume that Plaintiff was qualified for the job, Plaintiff still has not proffered any evidence showing that similarly situated Caucasian employees were treated more favorably than she. Although Plaintiff makes the broad allegation that her Caucasian–Hispanic co-workers were similarly situated, "[t]o make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects." *Id.*

The record discloses no evidence that the employees who were allegedly treated differently than Plaintiff were, in fact, similarly situated to her. First, Plaintiff admits that she does not know whether the other employees had received customer or co-worker complaints. Thus Plaintiff fails to show that her Caucasian co-workers were "accused of the same or similar conduct." *Id.; see also Nieto v. L & H Packing Co.,* 108 F.3d 621, 623 (5th Cir.1997) (finding employees not similarly situated where misconduct was different). In addition, Plaintiff fails to offer any evidence showing that the other employees had similar employment records and had received as many reprimands as she. *See Ward v. The Procter & Gamble Paper Prods. Co.,* 111 F.3d 558, 561 (8th Cir.1997) (finding employees not similarly situated where employment records were different). More im-

portantly, Plaintiff offers no competent, non-speculative evidence that any co-workers were, in fact, treated differently than she.

■ Even if the Court were to go so far as to assume that Plaintiff had established a prima facie case of discrimination, Defendant has proffered a legitimate business reason for the termination: Plaintiff's insubordination. Plaintiff has failed to provide evidence sufficient to show that the reason is merely a pretext for invidious racial discrimination.

■ First, Plaintiff admits that her behavior generated complaints from customers and co-workers. She admits that these complaints led her superiors to conclude that she had a poor attitude. Plaintiff contends, however, that such complaints should not have been a basis for her termination because she had, in fact, not been rude to her customers and co-workers. "[The employee's] perception of himself, however, is not relevant. It is the perception of the decision maker which is relevant." *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980). "The fact that an employee disagrees with an employer's evaluation of him does not prove pretext." *Billet v. CIGNA Corp.,* 940 F.2d 812, 825 (3d Cir. 1991). Moreover, even if the Court agreed with Plaintiff that her behavior was not insubordinate, Title VII does not give the Court the power to substitute its own business judgment for that of the employer. *See Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1501 (11th Cir.1991) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.") (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)). Given the multiple customer and co-worker complaints, Defendant could have reasonably concluded that Plaintiff was insubordinate. The fact that Plaintiff believed she did not deserve to be terminated does not make Defendant's reason for terminating her pretextual.

Next, Plaintiff claims that Defendant's justification for her termination is pretextual because she did not say to Soberon, "I won't do it," but rather stated "I won't quit." Plaintiff admits, however, that the meeting with Soberon was prompted by her failure to carry out Morales's directive. Even assuming Plaintiff's version of the events to be true, the fact that Soberon heard, "I won't do it" rather than "I won't quit" in response to her directive is merely bad luck on Plaintiff's part. It is not evidence that Plaintiff's termination for insubordination was pretextual, especially in light of the fact that Plaintiff had failed to follow Morales's directive and had a history of customer and co-worker complaints. *See Nix v. WLCY Radio,* 738 F.2d 1181, 1187 (11th Cir.1984) (" 'Title VII is not a shield against harsh treatment at the workplace.' ") (quoting *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir.1981)).

■ Moreover, Plaintiff's superiors specifically told Plaintiff on several occasions that she must discontinue her insubordinate behavior. *See Dale* 797 F.2d at 463 (granting summary judgment when "the record clearly establishe[d] that the [employer] communicated its expectations to [the employee] long before he was terminated"). While Plaintiff disputes that she had been insubordinate, she does not dispute that her superiors communicated to her their belief that her behavior was improper. Thus, Plaintiff has not shown that she was meeting Defendant's legitimate employment expectations. *See Vasquez v. FIserv CIR, Inc.,* 1995 WL 431249, at \*8 (N.D.Ill.1995) (granting summary judgment and observing that "[a]lthough [plaintiff's] technical behavior was acceptable, the evidence clearly and convincingly establishes that he did not meet [defendant's] legitimate expectations of professional conduct"). Indeed, in the instant case, Plaintiff's technical behavior was not objectively acceptable. Insubordination and failure to carry out directives are ordinary reasons for termination. "Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for ... uncivil conduct in dealing with subordinates and with peers." *Jackson v. St. Joseph State Hosp.,* 840 F.2d 1387, 1391 (8th Cir.1988).

■ Plaintiff alleges that other circumstantial evidence of discrimination shows Defendant's proffered business reason to be pretextual. The Court finds that this allegation amounts to nothing more than mere speculation and conjecture. " 'Conclusory allegations of discrimination, without more, are

not sufficient to raise an inference of pretext or intentional discrimination.'" *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir.1988) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987)); *see also Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir.1989) (plaintiff's "subjective conclusion ... without supporting evidence, [is] insufficient to establish pretext"); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988) ("mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment").

Plaintiff contends that Caucasian–Hispanic employees received more favorable treatment than she. Specifically, she alleges that other employees had not been disciplined for rude behavior. Plaintiff, however, fails to prove that Defendant was aware of this behavior. Plaintiff provides no evidence that such rude behavior was ever reported to management. More importantly, Plaintiff has not proffered any evidence showing that the other employees, in fact, received less discipline than she. Plaintiff's subjective belief that other employees were treated more favorably than she does not show that Defendant's business reason was pretextual. *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1522 (11th Cir.1995) (plaintiff's speculation is insufficient evidence of discrimination).

Plaintiff also contends that the use of the word "negra" by a co-employee and the speaking of Spanish in the workplace constituted discrimination and showed Defendant's business reason to be pretextual. The merits of the contention that these acts constitute discrimination are addressed below. Even assuming that Plaintiff had evidence that her co-workers treated her in a disparate manner, such evidence would not show that Defendant had an intent to discriminate against her when it terminated her. First, Plaintiff offers no evidence showing that her supervisors were even aware of, much less condoned, the use of the word "negra." In addition, Plaintiff's deposition discloses that when she complained about the speaking of Spanish in the workplace, her supervisors

reprimanded the Spanish speakers and the Spanish speaking stopped for one week. Plaintiff has not alleged that her supervisors ever gave her directives in Spanish or directly communicated with her in Spanish. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (White, J. concurring) (statements by non-decision makers do not raise an inference of discrimination).

 Finally, Plaintiff alleges that a fellow title clerk received higher pay than she but offers no competent evidence corroborating this allegation. She admits that she obtained the information from a "leak" in the employee payroll department and never verified the accuracy of the rumor. Plaintiff's unequal pay allegation is based solely on hearsay and amounts to nothing more than speculation. *See Greenfield v. City of Miami Beach*, 844 F.Supp. 1519, 1526 (S.D.Fla.1992), aff'd 20 F.3d 1174 (11th Cir.1994) ("hearsay evidence ... may not be considered by the court when deciding a summary judgment motion"). "[R]umors, conclusory allegations, and subjective beliefs ... are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1096 (6th Cir. 1996). Consequently, Plaintiff has not demonstrated "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions'" to show that Defendant's proffered business reason is pretextual. *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996)).

## II. Hostile Work Environment

 Plaintiff's hostile work environment claim also fails to survive the Motion for Summary Judgment. To prevail on a hostile work environment claim, a plaintiff must show that the conduct he complains of was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (1982)); *see also Edwards v. Wallace Community College*, 49

F.3d 1517, 1521 (11th Cir.1995). A hostile work environment under Title VII is one "polluted with racial discrimination." *Busby v. City of Orlando,* 931 F.2d 764, 785 (11th Cir.1991).

Plaintiff's allegation that certain employees spoke Spanish in her presence, even if assumed to be true, does not rise to the level of a hostile work environment claim. There is no evidence that the speaking of Spanish constituted harassment "sufficiently severe or pervasive to alter the conditions" of Plaintiff's job. *Meritor,* 477 U.S. at 67. Moreover, while Plaintiff speculates that the use of the word "negra" was a derogatory statement directed toward her, she offers no evidence that this is the case. In addition, even if the word was a derogatory remark directed at Plaintiff, " 'mere utterance of an epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savings Bank,* 477 U.S. at 67). Finally, Plaintiff has not proffered any evidence that Defendant was aware of the alleged acts of harassment and either failed to prevent them or endorsed them. *See Greenfield,* 844 F.Supp. at 1526 (granting summary judgment and observing that even though a statement made by a co-worker was "repulsive," plaintiff had offered "no evidence that the statement was in any way related to her firing"). Consequently, summary judgment on Plaintiff's hostile work environment claim is warranted.

## III. Retaliation

Plaintiff has not established a prima facie case of retaliation because she has not shown that she engaged in protected activity. To prove a prima facie case of retaliation under Title VII, 42 U.S.C. § 2000e–3(a), a plaintiff must establish that: (1) there was a statutorily protected expression; (2) an adverse employment action occurred; and (3) there was a causal link between the protected expression and the adverse action. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993).

Plaintiff contends that her complaints to Soberon about the speaking of Spanish in the workplace constituted protected activity under Title VII. In order to engage in protected activity, the underlying act complained of need not, in fact, violate Title VII. Rather, the employee merely needs to have a reasonable belief that the employer has engaged in unlawful employment practices. *EEOC v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1014 (9th Cir.1983). However, the employee must, at the very least, communicate her belief that discrimination is occurring to the employer. It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred. *See Jurado v. Eleven–Fifty Corp.,* 813 F.2d 1406, 1411 (9th Cir.1987) (affirming grant of summary judgment and observing that Plaintiff had "not shown that he ever opposed the [policy] as discriminatory before he was fired. He merely opposed the [policy] for personal reasons"). In addition, it is highly unlikely that Defendant would have assumed that Plaintiff's efforts to eliminate Spanish speaking in the workplace came under the protective umbrella of Title VII, in light of the fact that Title VII prohibits employers from denying employees the right to speak Spanish to other employee's in the workplace. The Equal Employment Opportunity Guidelines of Discrimination Because of National Origin state in pertinent part:

> A rule requiring employees to speak only English at all times in the workplace is a burdensome term and condition of employment. The primary language of an individual is often an essential national origin characteristic. Prohibiting employees at all times, in the workplace, from speaking their primary language or the language they speak most comfortably, disadvantages an individual's employment opportunities on the basis of national origin. It may also create an atmosphere of inferiority, isolation and intimidation based on national origin which could result in a discriminatory working environment. Therefore, the Commission will presume that such a rule violates Title VII and will closely scrutinize it.

29 C.F.R. § 1606.7. Essentially, Plaintiff's claimed "protected activity" amounts to an effort to make Defendant institute a policy which, in all likelihood, would violate Title VII.

### Conclusion

Over the years, work environments have come to reflect our increasingly multi-cultural world. With the coming together of numerous diverse ethnicities and cultures in the common workplace, there are bound to be not only many instances of cultural harmony but also some occasions of cultural friction. In Plaintiff's words, "It's a lot of people there that have a lot of different personalities, a lot of cultures there. There's a lot—there's a lot of room for just misunderstandings." (Plain. Dep. at p. 133). While this Court sincerely hopes that all employees of all cultures will choose to exercise common respect and courtesy, it cannot allow Title VII to be used as a sword by which one culture may achieve supremacy in the workplace over another.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, GRANTED. It is further

ORDERED and ADJUDGED that FINAL JUDGMENT be and is hereby ENTERED in favor of DEFENDANT.

DONE and ORDERED in Chambers at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 21st day of January, 1998.