Jennifer BOWEN, Plaintiff,

v.

**JAMESON HOSPITALITY, LLC d/b/a Jameson Inn, Defendant.**

**No. CV401–36.**

United States District Court,
S.D. Georgia,
Savannah Division.

April 11, 2002.

Fred S. Clark, Clark & Clark, Savannah, GA, for plaintiff.

Lisa Godbey, Wood, Gilbert, Harrell, Gilbert, Sumerford & Martin, PC, Brunswick, GA, Gary R. Kessler, Irvin, Stanford & Kessler, LLP, Atlanta, GA, for defendant.

## ORDER

MOORE, District Judge.

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 17).[1] After careful consideration, the Court finds that Defendant's motion must be **GRANTED.**

## BACKGROUND

The following facts are taken from the parties' statements of material facts and responses. Plaintiff Jennifer Bowen began working for Defendant Jameson Inn, a hotel chain, in November 1999. She was hired as a regional sales manager. Hal Smith, the Regional Operations Manager, was her direct supervisor.

Shortly after Plaintiff's hiring, Mr. Smith and Plaintiff met to discuss Plaintiff's job responsibilities. Plaintiff's territory covered approximately eleven cities. Initially, Plaintiff was to familiarize herself with each hotel in her territory. She did this by visiting each hotel, looking over the property, meeting the hotel manager, checking out the competition, and going to the local chamber of commerce. During these initial visits, Plaintiff spent approximately two days at each hotel.

The initial visits concluded in January 2000. At that point, Mr. Smith instructed Plaintiff to visit hotels on a weekly basis, staying for a week or two before moving on to another hotel. Plaintiff would complete weekly reports detailing the activities she had engaged in during the prior week. Mr. Smith would tell Plaintiff which hotel she should visit next.

One of Plaintiff's responsibilities in each of her cities was to engage in marketing activities that would increase revenue for the hotel. For instance, she would work on maintaining existing accounts, regaining lost accounts, and uncovering potential new clients in the community. She would also work with hotel managers to try to bring in more customers. Plaintiff's over-

---

1. Also before the Court is Plaintiff's Motion to Strike. (Doc. 23). For the reasons discussed in footnote 2, *infra,* Plaintiff's motion to strike is **DENIED.**

all job objective, in hotel jargon, was to increase "heads in the beds."

Defendant asserts that in January 2000, Mr. Smith began receiving complaints from some of the general managers about Plaintiff.[2] According to Mr. Smith, the managers reported that Plaintiff was abrasive toward managers and other hotel employees. Mr. Smith says he spoke to Plaintiff about the complaints, but she was not very receptive.[3] Plaintiff maintains that she had a good relationship with the managers.

On April 14, 2000, Mr. Smith met with Plaintiff to discuss concerns he had with Plaintiff's job performance, including what Mr. Smith perceived as an "attitude" Plaintiff had towards him.[4] Mr. Smith felt that Plaintiff had been improperly communicating with Rod Collins, whom Plaintiff identifies as the Vice President in charge of marketing and sales. (Pla.Resp. to Def. Sta.Mat. Facts at ¶ 5). She also had sent copies of e-mails to another Jameson employee, Greg Winey. Plaintiff admits that Mr. Smith expressed concerns about their relationship. She feels that Mr. Smith thought Plaintiff was challenging his authority when she communicated with Mr. Collins.

Also at the April 14, 2000 meeting, Mr. Smith and Plaintiff discussed what Mr. Smith perceived as Plaintiff's avoidance of the "Corporate Market," her failure to follow his instructions, and her choice to follow her own agenda. Mr. Smith had previously told Plaintiff that she should meet with corporate leaders, talking with them

---

**2.** Plaintiff has filed a motion to strike the affidavit of Hal Smith or portions thereof. (Doc. 23). In her motion, Plaintiff directs the Court's attention to several specific statements. These statements appear in paragraphs 4, 5, 8, 11, 12, 13 and 14 of Mr. Smith's affidavit. Plaintiff does not discuss any of the objected-to statements in detail, but in general, she asserts that the affidavit should be stricken because it contains inadmissable hearsay and also because it contains statements which are not based on personal knowledge. Defendant has filed a response.

Upon careful consideration of each paragraph, the Court finds none of the statements to be inadmissible. For instance, while Mr. Smith states that some of the hotel managers had reported that Plaintiff was "mean," Defendant is not offering the statement for the truth of the matter asserted, that is, the fact that Plaintiff was mean. Instead, Defendant is offering these statements for their effect on the hearer, Mr. Smith. As another example, Plaintiff objects to Mr. Smith's statement that Plaintiff did not consider him to be her manager. Mr. Smith testimony is not meant to show that Plaintiff, in fact, did not consider Mr. Smith to be her manager. Rather, Mr. Smith is demonstrating his own understanding of Plaintiff's attitude in the time frame leading up to Plaintiff's firing.

All the other objected-to paragraphs can be addressed the same way. They do not pur-

port to show that all the facts as understood and reported by Mr. Smith are literally true. In fact, even if Mr. Smith is incorrect about the facts, the admissibility of his affidavit would not be affected. Mr. Smith's statements demonstrate his own state of mind and are offered for no improper or inadmissible purpose. Plaintiff's motion to strike is therefore **DENIED.**

**3.** Although in her response to Defendant's statement of material facts, she denies Mr. Smith talked to her about the complaints, (Pla.Resp. to Def.Sta.Mat. Facts at ¶ 3), in her deposition, Plaintiff stated that she did "remember him mentioning [the complaints] because I thought that was completely unfounded." (Bowen Depo. at 189). Plaintiff does not explain why she nevertheless denies Defendant's statement.

**4.** In her response to Defendant's statement of material facts, Plaintiff states "There is no evidence in the record of Bowen developing an attitude towards Smith." (Pla.Resp. to Def.Sta.Mat. Facts at ¶ 4). However, she does not dispute that Mr. Smith thought she had an attitude toward him. In fact, in her deposition, Plaintiff states, "He felt that there was an attitude toward him." (Bowen Depo. at 189).

face to face, in order to secure corporate accounts for the hotel. Mr. Smith said that this approach was necessary because a small hotel chain like Defendant's could not afford to spend much money on marketing. Mr. Smith expressed concern that Plaintiff had failed to accomplish anything substantial in regards to bringing in business to the hotels. Plaintiff, however, maintains that she had, in fact, been calling on potential corporate clients and had been pursuing several avenues to increase revenue. Accordingly, she denies that Mr. Smith's criticisms actually applied.

Sometime during the same month that Mr. Smith met with Plaintiff, Mr. Smith became concerned with a decline in revenue at the hotel in Jesup, Georgia. While the January revenue had increased for that location, in February and March the revenue had declined 9.97% and 22.85%, respectively, compared to the same months the year before.[5] According to Mr. Smith, industry reports showed that the hotel next door to the Jameson was selling more rooms. Due to an oversupply of rooms in Jesup, the two hotels appeared to be having a price war.

At that time, the manager of the Jesup hotel was Adrian Jones, who is black. During an earlier conversation with Ms. Jones, Mr. Smith had instructed her to spend approximately ten hours a week calling on accounts. While Ms. Jones was doing so, in Mr. Smith's opinion these businesses were small "mom and pop" stores instead of the larger business that would generate corporate accounts. Mr. Smith had concluded based on conversations with Ms. Jones that Ms. Jones was not comfortable dealing with larger businesses. Mr. Smith states that he did not have a problem with Ms. Jones' discomfort since she

was hired to manage the hotel, not to be an expert in sales, but he decided to send Plaintiff to the Jesup hotel for a period of four to six weeks to improve the situation.

When Mr. Smith spoke to Plaintiff, he told her he wanted her to go to Jesup, investigate the reasons for the decline in revenue, and submit a report reflecting why Ms. Jones had lost business at her hotel. He asserts that he also wanted Plaintiff to call on corporate leaders while she was there in order to generate more corporate business. However, Plaintiff feels that Mr. Smith "wanted me to go down to Jesup and find fault with Adrian and to document that to him, because he wanted to get rid of her."

According to Plaintiff, the reason Mr. Smith wanted to fire Ms. Jones was Ms. Jones' race. In support, Plaintiff points to several comments that Mr. Smith made about Ms. Jones. For instance, Mr. Smith stated in several conversations that Ms. Jones was not the "type" of manager he wanted. He also said of Ms. Jones and her assistant manager, Jo Barrett, that it "didn't look good to have those two going out together calling on business."[6]

Plaintiff does not allege that Mr. Smith explicitly referred to Ms. Jones' race in either of these statements, admitting that he spoke in general terms. She also admits that Mr. Smith "indicated that they were now looking for people that were more professional looking [and] that had more of a business sense," characteristics which are unrelated to race. However, when Defendant made these statements and when he said that "Adrian didn't fit the image of what Jameson was about with the new properties," Plaintiff perceived his comments to be race-related.

---

**5.** The revenue for April declined by 17.83% compared to the year before.

**6.** Ms. Barrett is of Hawaiian descent.

In another alleged incident, the reference to race was clear. Plaintiff asserts that at some point, Mr. Smith referred to Ms. Jones and Ms. Barrett as "being black" and stated that their calling on accounts together made the hotel look like "a hotel for blacks." [7] As a final piece of evidence of Defendant's alleged discrimination, Plaintiff asserts that while she was working for Defendant, she understood Ms. Jones' salary to be $8,000 per year less than similarly situated white males.[8] Based on these statements and facts, she believed that Mr. Smith did not want Ms. Jones to serve as manager in Jesup because of Ms. Jones' race.[9]

After spending a few days in Jesup, Plaintiff sent a report to Mr. Smith. Plaintiff's report did not explain why the Jesup hotel had lost business. Instead, Plaintiff reported that Ms. Jones had a good understanding of the business and was doing a great job. Defendant does not deny that Ms. Jones was doing a good job, but argues that these observations failed to address the decline in revenue at Ms. Jones' hotel. While Plaintiff admits that the report was not what Mr. Smith wanted, she argues that Mr. Smith's problem with the report was the fact that, in the report, Plaintiff had refused to find fault with Ms. Jones.

In addition to arguing that the report did not furnish the information Mr. Smith requested, Defendant further asserts that while she was in Jesup, Plaintiff did not do anything herself that would generate revenue, such as call on corporate clients. Plaintiff, however, argues that she did generate business for the Jesup hotel. For instance, she asserts that she contracted with CSX Railroad and also recaptured business from the Georgia Department of Transportation. However, regardless of any of Plaintiff's efforts, Defendant indicates that revenue at the Jesup hotel continued to decline.[10]

After Plaintiff had been in Jesup for only two weeks, Mr. Smith cut short her trip. Instead of having Plaintiff stay in Jesup, he first instructed her to report to Brunswick. A couple of days later, after the circumstances at the Brunswick hotel changed, Mr. Smith instructed Plaintiff to go to Jacksonville. Plaintiff asserts that at the point Mr. Smith told her not to return to Jesup, she had already made several appointments for the following week to

---

7. Defendant denies that Mr. Smith made such a statement and points out that Plaintiff did not report the statement about the managers "being black" or the hotel being "for blacks" in her EEOC questionnaire. For purposes of this motion, however, the Court will assume that Mr. Smith made the statement.

8. It is not clear what Plaintiff's statement regarding salaries is based on. Nevertheless, as with several statements in Mr. Smith's affidavit, the Court includes this statement, not because the Court assumes it is true, but because it demonstrates Plaintiff's state of mind at the time of these incidents.

9. In her statement of material facts, Plaintiff states that "Mr. Smith stated expressly that he wanted [Ms. Jones] terminated because she was a black female Manager and had a black female assistant manager." (Pla.Sta.Mat. Facts at ¶ 5). However, this comment mischaracterizes the testimony. Plaintiff specifically identifies every allegedly racist comment made by Mr. Smith, and nowhere does she identify any statement by Mr. Smith in which he explicitly expressed his desire to have Ms. Jones terminated. Moreover, she never testified that Mr. Smith explicitly said he wanted Ms. Jones to be terminated because of her race. Even reading Plaintiff's deposition testimony in the light most favorable to her, she is saying only that, while he may have used general language, in her opinion, Mr. Smith wanted Plaintiff to find a reason to fire Ms. Jones because of Ms. Jones' race.

10. In May 2000, revenue was down 29.62% from the year before.

generate business in that town.[11]

After she reported to Jacksonville in May 2000, Plaintiff's problems with Mr. Smith continued. The Jacksonville hotel had opened in March 2000, and so far, the hotel had low occupancy and a lack of revenue. While assigned to Jacksonville, Plaintiff submitted several reports to Mr. Smith detailing her marketing activities. Examples of her activities included investigating competitors' business, identifying marketing segments that Plaintiff felt should be tracked, identifying business that could be garnered from Interstate 95 and from the leisure market, calling hospitals in the area, talking to the alumni association for a nearby university, and working with the university registrar to get information about the university's graduation. Plaintiff also inquired into using a University of North Florida Billboard that cost $2,000, and purchasing a membership in the Convention and Visitors Bureau.

Defendant argues and Plaintiff agrees that Mr. Smith wanted Plaintiff to spend more time going to corporate offices and meeting people face to face. However, Plaintiff asserts that not only was she doing that, she was engaging in these other activities that would have eventually generated revenue. Still, Defendant maintains that while Plaintiff was working in Jacksonville, occupancy at the Jacksonville hotel stayed low.

Plaintiff contends that her efforts yielded more results than Defendant admits, generating business in Waynesboro, Dublin, Jesup and Jacksonville. Plaintiff argues, however, that rather than appreciate her efforts, Defendant disparaged them.

For instance, on one occasion, when Plaintiff had secured a corporate account at a set rate, Plaintiff claims that Mr. Smith then offered the client an even lower rate. Plaintiff also asserts that when Plaintiff did secure bookings in Jacksonville, Defendant never informed her that her efforts had paid off.

Moreover, to the extent business was nonetheless failing, Plaintiff asserts that Defendant's expectations were unrealistic. For instance, Plaintiff noted that it was hard for Defendant to compete in Jacksonville with hotels that had more meeting space. She also argues that other avenues than the corporate market needed to be explored. Furthermore, Plaintiff contends that Defendant, itself, failed to follow its own corporate plan for generating business before the Jacksonville hotel even opened, also contributing to a lack of revenue.

Overall, Plaintiff suggests that Mr. Smith wanted Plaintiff to appear to fail so he would have an excuse to fire her. In addition to ignoring her suggestions and accomplishments, Plaintiff contends that Mr. Smith refused to furnish her with specific goals, failed to communicate effectively, and disrupted her work by changing her assignment at the last minute. As an example of the latter, Plaintiff claims that one week when she was scheduled to go to Jacksonville, Mr. Smith directed her to go to Jesup at the last minute.[12] Plaintiff asserts that all these problems arose as a result of her not writing a negative report about Ms. Jones.

On May 19, 2000, Mr. Smith fired Plaintiff. Defendant asserts that Plaintiff was fired because, despite her purported expe-

---

11. Plaintiff does not assert that she told Mr. Smith about these appointments.

12. Plaintiff suggests the last minute change was in some amount designed to have Plain-

tiff catch Ms. Jones off-guard. However, Plaintiff does not allege that Mr. Smith, himself, stated explicitly or implicitly such an intent.

rience and success in hotel sales and marketing, Plaintiff failed to increase revenue at her hotels. Defendant also asserts that she was insubordinate towards Mr. Smith.

Plaintiff disagrees with Defendant's reasoning. She maintains that she was fired because she refused to assist Mr. Smith in his attempts to find fault with Ms. Jones' performance and ultimately to have Ms. Jones terminated. After her firing, Plaintiff filed a claim with the EEOC for retaliation. Later, Plaintiff filed this suit.

Defendant has now filed a motion for summary judgment, arguing that Plaintiff cannot prove her claim of retaliation. Plaintiff filed a response to Defendant's motion and Defendant then filed a reply. The Court will now discuss why Defendant's motion should be granted.

## ANALYSIS

### I. *Summary judgment standard*

Summary Judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56 advisory committee's note). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Tid-more Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384, 1387–88 (11th Cir.1991). The substantive law governing the action determines whether an element is essential. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1505 (11th Cir.1989).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir. 1991); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. However, if the nonmoving party's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then the court must enter summary judgment in the moving party's favor. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [then] there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512; *Johns v. Jarrard*, 927 F.2d 551, 556 (11th Cir.1991).

In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992); *Ryder Int'l. Corp. v. First Am. Nat'l. Bank*, 943 F.2d 1521, 1523 (11th Cir.1991). The Court must avoid weighing conflicting evidence. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987). A mere "scintilla" of evidence supporting the opposing party's position, however, will not suffice. *See, e.g., Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir. 1989) (citation omitted).

## II. *Claim under 42 U.S.C § 2000e–3(a)*

Plaintiff's claim is based on 42 U.S.C. § 2000e–3(a). This statute provides, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e–3(a). Because it prohibits retaliation against employees who oppose discrimination, this section is sometimes called the opposition clause. *See, e.g., Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1350 (11th Cir.1999) (referring to cited section as opposition clause).

To prove a case under the opposition clause, Plaintiff must first present evidence of a prima facie case, creating a presumption that retaliation occurred. *See Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 n. 6 (11th Cir.2000). If she does so, Defendant then has the burden of producing evidence that a legitimate, nondiscriminatory reason, rather than retaliation, is responsible for the firing. *See id.* Once Defendant comes forth with such evidence, the presumption of retaliation is overcome. *See id.* At that point, Plaintiff has the burden of showing that Defendant's purported reason is really pretext for discrimination. *See id.; EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993) (applying burden shifting analysis to retaliation claim).

### A. *Prima facie case*

In order to make a prima facie case of retaliation, Plaintiff must prove three things. She must demonstrate that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action.[13] *See Bass v. Board of County Commissioners, Orange County, Fla.,*

---

**13.** Defendant states that a prima facie case for retaliation requires four elements, the three identified above and also that "her employer was aware of" Plaintiff's having engaged in protected activity. *See Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir.1999) (citation omitted). The Court finds that, despite its different form, the prima facie case set forth in *Maniccia* is essentially the same as the three-step prima facie case described in *Bass v. Board of County Commissioners, Orange County, Fla.*, 256 F.3d 1095 (11th

Cir.2001). While *Bass* does not list the employer's knowledge as a separate prima facie element, in that case the Eleventh Circuit nevertheless required proof of the employer's knowledge of the protected activity as part of causation. *Id.* at 1117, 1119 (citations omitted). Accordingly, consistent with *Maniccia*, the Court will consider proof of Defendant's knowledge, but the Court will do so as part of the causation element, rather than as a separate issue.

256 F.3d 1095, 1117 (11th Cir.2001). Defendant argues that Plaintiff cannot prove either the first or third elements. The Court will discuss both of these elements below.

### 1. *Protected activity*

■ As the first element of Plaintiff's prima facie case, she must prove that she engaged in a protected activity, specifically that she opposed an unlawful employment practice by Defendant. An unlawful employment practice is one which involves either (1) discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," or (2) limiting, segregating, or classifying employees "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. To show that she engaged in a protected activity, Plaintiff does not have to prove that the practice she opposed was, in fact, an unlawful practice under Title VII. *See Little v. United Technologies, Carrier Transicold Division*, 103 F.3d 956, 960 (11th Cir.1997) (holding that a plaintiff "need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a prima facie case"). Instead, she needs only establish that she had a "good faith, reasonable belief" that Defendant had engaged in unlawful discrimination as defined by Title VII and explained above. *Clover*, 176 F.3d at 1351. To have had a "good faith, reasonable belief," Plaintiff must show both that she subjectively believed Defendant was unlawfully discriminating against Ms. Jones, and also that a

reasonable person would have agreed. *Little*, 103 F.3d at 960 ("It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.") (emphasis in original).

Plaintiff alleges that she reasonably and in good faith believed that Mr. Smith wanted to discriminate against Ms. Jones because of Ms. Jones' race. Specifically, Plaintiff alleges that Mr. Smith wanted her to write a false, negative report about Ms. Jones in order to give Mr. Smith a reason to fire her. Defendant, however, claims that Plaintiff has failed to establish that she had a good faith, reasonable belief that any unlawful employment practice occurred. Defendant argues that Mr. Smith merely asked Plaintiff to write a report explaining the drop in revenue, which is not, itself, an unlawful employment practice.

The Court agrees with Defendant that Plaintiff cannot show her belief that she was opposing an unlawful employment practice was reasonable. The evidence does support a finding that Mr. Smith made racist statements about Ms. Jones, and may also support a finding that Mr. Smith wanted another, non-black manager for the Jesup hotel. Still, the evidence also shows that Mr. Smith only asked Plaintiff for a report about why Ms. Jones had lost business at her hotel. Plaintiff does not dispute that revenue was down in Jesup. Nor does she allege that Mr. Smith actually asked for a report criticizing Ms. Jones.[14] Nevertheless, Plaintiff seems to

---

**14.** Plaintiff has never explained why a report

about the loss of business at Ms. Jones' hotel

assert that a reasonable person would still have inferred from Mr. Smith's other remarks that when he asked for the report about the drop in revenue, he was really asking Plaintiff to write a report criticizing Ms. Jones so that he could fire her.[15] With Plaintiff's argument, the Court cannot agree. A reasonable person would not assume that a request for a report about an indisputable decline in revenue could be an unlawful employment practice.

Plaintiff clearly feels that Mr. Smith wanted her to write a report criticizing Ms. Jones, and she seems to believe that his wanting her to do so constitutes an unlawful employment practice. However, even assuming the jury could find that Plaintiff subjectively believed she was engaging in protected activity, the Court finds that the jury could not find that her belief was objectively reasonable. Her prima facie case having failed, Defendant's motion for summary judgment must be granted.

### 2. Causation

■ The Court further finds that even had Plaintiff proved the first element of her prima facie case, her claim would fail on the third element, causation. Plaintiff's burden on this element is not a heavy one. She need only show "that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985). Generally, this requires a plaintiff to prove, at least, that the employer was aware of the plaintiff's opposition before taking the adverse action. *See Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997) ("In order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.") (citation omitted).

Defendant maintains that Plaintiff has introduced no evidence that Defendant knew of Plaintiff's alleged opposition before she was fired. In other words, Defendant argues that Plaintiff has produced no evidence that when Plaintiff wrote a positive report about Ms. Jones, Mr. Smith or anyone else knew she was doing so in opposition to what she saw as an unlawful employment practice. In response, Plaintiff argues only that because the causal link is interpreted broadly, and because she only needs to show that her opposition to Mr. Smith's practice and her termination are not completely unrelated, she has made a prima facie case. Reading her response brief more broadly, Plaintiff seems to argue that because Mr. Smith began treating her harshly soon after she wrote her report about Ms. Jones, circumstantial evidence supports a finding that Mr. Smith knew she was opposing his alleged discrimination.

The Court disagrees that Plaintiff's evidence is enough to survive summary judg-

would have necessarily required Plaintiff to criticize Ms. Jones. Mr. Smith testified and Plaintiff does not dispute that a new hotel had recently opened in Jesup. Also, Plaintiff does not challenge Mr. Smith's assertion that he wanted Ms. Jones' primary responsibility to be hotel management, not sales. Hence, even if Plaintiff had thoroughly explained why Ms. Jones had lost business at her hotel, Plaintiff has not made clear why such a report would reflect badly on Ms. Jones personally. In fact, in spite of the drop in revenue at that time, Ms. Jones was later promoted by Defendant.

15. The Court is assuming for purposes of this discussion that had Mr. Smith told Plaintiff to write a false, negative report about Ms. Jones solely because Ms. Jones is black, such a request would have been an unlawful employment practice.

ment. While Plaintiff's burden is not heavy, she cannot avoid proving Defendant's knowledge of her purported opposition. Proving knowledge is important because an employer cannot retaliate against behavior of which the employer is not aware. *See Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir.2000) (finding that the requirement of knowledge "rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him."). While circumstantial evidence, such as temporal proximity, does play a role in proving knowledge, temporal proximity alone is not enough if "there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Id.; Clover*, 176 F.3d at 1354–55 (finding that inference of knowledge must be based on evidence, not speculation, so that when the decision maker has denied having knowledge, the plaintiff must impeach that testimony in order to proceed).

Here, according to his affidavit, Mr. Smith did not know that Plaintiff was opposing what she perceived as an unlawful employment practice when she did not write a report about the decline in revenue in Jesup. Plaintiff has not offered any evidence, other than temporal proximity, to refute that evidence. For instance, she does not assert that she told Mr. Smith that she disapproved of his racism. Nor does she claim that she informed anyone else at Jameson that Mr. Smith was acting in a discriminatory fashion. In fact, nothing she offers actually refutes Mr. Smith's statements that he did not construe anything Plaintiff said to be opposition to alleged discrimination.[16] The Eleventh Circuit has made clear that un-

der these circumstances, Plaintiff's case cannot survive summary judgment. *Brungart*, 231 F.3d at 799–800 ("at the summary judgment stage, 'implying' knowledge from temporal proximity despite the unrefuted testimony of the decision maker that he knew nothing of the protected conduct means that we should allow a factfinder to decide, without any basis other than temporal proximity, that the decision maker is lying ... we know from our *Clover* decision that we do not do that in Title VII cases."). Because Plaintiff must have more than personal beliefs and speculation to reach a jury, she has not produced sufficient evidence to survive summary judgment on her prima facie case.

### B. *Legitimate, nondiscriminatory reason*

▮ Even if the Court were to assume that Plaintiff had established a prima facie case, Plaintiff's case fails later in the inquiry. After considering the prima facie case, the next step is to consider whether Defendant has produced evidence of a legitimate, nondiscriminatory reason for its action against the employee. Defendant's burden is satisfied if it produces evidence of a reason, and it need not prove that it was actually motivated by that reason. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In this case, Defendant argues that Plaintiff was hired to increase revenue at its hotels, but instead, despite her efforts, revenue was dropping. Accordingly, Defendant asserts that Plaintiff was not performing her job in a satisfactory manner.

---

16. Plaintiff also does not dispute that she did not write a report about the decline in revenue. Hence, to the extent Mr. Smith was angry after reading her report, she cannot show that his reaction can be attributed to her opposition of an unlawful practice rather than anger at her having failed to follow his instruction.

Additionally, Defendant contends that rather than comply with Mr. Smith's directive that she go to the offices of potential corporate clients and meet them face to face, Plaintiff pursued other marketing strategies, even after being told that some of her proposals were cost-prohibitive. Defendant argues that Plaintiff's choice not to follow directions demonstrates that, in addition to failing to perform her job, she was also insubordinate. Because Defendant has offered two nondiscriminatory reasons for Plaintiff's firing, the Court will now consider whether Plaintiff can prove pretext.

## C. *Pretext*

Once a defendant offers a legitimate, non-discriminatory reason for its action, the plaintiff must attack that reason "head on and rebut it" so as to show that the proffered reason is really pretext for discrimination. *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000). To show that a defendant's stated reasons are pretext, the plaintiff must offer evidence that "cast[s] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting *Cooper–Houston v. Southern Ry. Co.,* 37 F.3d 603, 605 (11th Cir. 1994)). In other words, a plaintiff may establish that her employer violated Title VII "by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. An explanation is unworthy of credence if the plaintiff demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the explanation that a reasonable jury could not believe it. *Combs,* 106 F.3d at 1538 (citations omitted).

In this case, Plaintiff asserts that the reasons Defendant gave for her firing, low productivity and insubordination, were really pretext for retaliation. She maintains that she has offered enough evidence for a reasonable jury to find that Defendant's actions were retaliatory. As with the prima facie case, Plaintiff does not elaborate on how the law supports her broad conclusions. However, inferring her arguments from her statement of facts, Plaintiff apparently relies on her assertions that Mr. Smith made racist comments which suggested he did not want Ms. Jones as a manager. Also, she contends that she understood Ms. Jones' salary to be less than that of other managers. Furthermore, she asserts that after Plaintiff wrote a report praising Ms. Jones, Mr. Smith began to treat her more harshly, including ignoring her communications to him and changing her assignment suddenly.[17] In addition, Plaintiff alleges that Mr. Smith gave her unnecessarily short deadlines. Finally, she contends that Mr. Smith disparaged

---

**17.** As the Court made clear earlier in this order, the fact that Plaintiff cannot show Defendant knew about Plaintiff's purported opposition leaves her unable to prove causation. The Court notes, however, that even if the lack of evidence about Defendant's knowledge had not been fatal to her prima facie case, it would be a problem here. A reasonable jury could not find that Defendant's reasons for firing Plaintiff were not true, and instead that she was fired in retaliation, when the evidence does not show that Mr. Smith or anyone else knew Plaintiff was opposing an allegedly unlawful practice. This is especially true since, as Defendant points out, Plaintiff admits that she did not write a report about the decline in revenue. Under the circumstances, a reasonable jury could not find that one of Defendant's proffered reasons for the firing, insubordination, was so implausible that retaliation must have been the actual motivation.

Plaintiff's efforts to increase revenue, overlooking or undermining her accomplishments. For these reasons, Plaintiff implicitly argues that a reasonable jury could conclude that Defendant is lying about Plaintiff's lack of productivity or insubordination in order to cover up the fact that Mr. Smith retaliated against Plaintiff for refusing to write a report disparaging Ms. Jones.

Defendant argues that Plaintiff has not presented enough evidence to show that its reasons for terminating Plaintiff are untrue. Defendant asserts that Plaintiff has presented no evidence to dispute the revenue decline. In fact, Defendant points to Plaintiff's own testimony, where she admits that revenue was down. (Bowen Depo. at 158–59). Defendant also asserts that Plaintiff does not deny having failed to follow Mr. Smith's directions since she admits that she refused to write a report about Jesup's decline in revenue and pursued other marketing activities than those to which she was directed.

The Court agrees with Defendant that Plaintiff has failed to rebut Defendant's explanations because she has failed to show either that she did improve revenue or that she was not insubordinate. Alternatively, Plaintiff could have demonstrated that she was treated differently from other employees, but she has not attempted to show that either. Instead, Plaintiff seems to argue that she is not responsible for the decline in revenue, because she was not given the freedom to pursue all the marketing activities she thought would be helpful. She also argues that she was not insubordinate because she was following Mr. Smith's directives to a degree. Unfortunately, however, even if the jury believed Plaintiff's contentions that had she been given flexibility to pursue a variety of marketing activities, she would have been able

to increase revenue, Plaintiff still has not shown pretext.

Plaintiff was asked to achieve a specific goal, increasing revenue, through specific means, meeting potential clients face to face. In Defendant's opinion, she failed to do this. It does not matter that Plaintiff thought she was doing a good job. *See Webb v. R & B Holding Co. Inc.*, 992 F.Supp. 1382, 1387 (S.D.Fla.1998) (" '[The employee's] perception of himself, however, is not relevant. It is the perception of the decision maker which is relevant.' ") (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980)). It also does not matter that Plaintiff feels Mr. Smith's marketing approach was unwise or even unfair. *Chapman*, 229 F.3d at 1030 ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."); *Combs*, 106 F.3d at 1543 ("[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where ... the reason is one that might motivate a reasonable employer."). All that matters is whether Defendant intended to retaliate against Plaintiff. *See Chapman*, 229 F.3d at 1030 (holding that courts do not decide whether a decision was good, bad or unfair, but instead focus on whether the employer is honest about having not discriminated); *see also Shealy v. City of Albany, Ga.*, 89 F.3d 804, 806 n. 6 (11th Cir.1996) ("[t]he district judge does not sit as a sort of 'super personnel officer' ... correcting what the judge perceives to be poor personnel decisions"). Instead of quarreling with Defendant's marketing approach, at this stage, Plaintiff must present enough evidence for a reasonable jury to find that

Defendant did not actually believe Plaintiff's productivity to be too low or did not honestly find her to be insubordinate.[18] Plaintiff has not done so.

In this case, Plaintiff expects her own beliefs about Defendant's motives to allow her to reach a jury, but "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination." *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir.1988) (citation omitted). Accordingly, even if this Court had found that Plaintiff can make a prima facie case, the Court cannot find that Plaintiff has enough evidence of pretext to reach a jury. As a result, summary judgment must be granted.

**CONCLUSION**

Because she cannot show either that she engaged in protected activity or that there is a causal connection between her writing her report and her being fired, Plaintiff cannot make a prima facie case for retaliation. Moreover, even if she had made a prima facie case, Plaintiff cannot show that Defendant's proffered reasons for her firing are mere pretext. Accordingly, Defendant's motion for summary judgment must be **GRANTED** and Plaintiff's case **DISMISSED.**

---

**18.** To the extent Plaintiff has introduced any evidence refuting Defendant's proffered reasons, she has created an issue too weak for trial. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) (holding that even when a plaintiff presents evidence of pretext, she cannot reach the jury if she has "created only a weak issue of fact as to whether the employer's reason was untrue").